## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | NORTHERN DISTRICT OF IOWA | |
|---|---|---|---|
| Name *(under which you were convicted)*: MICHAEL STEVENSON | 21-cv-1025-CJW-MAR | | Docket or Case No.: 2:18-cr-01023-CJW-MAR-1 |
| Place of Confinement: FCI OXFORD | | Prisoner No.: 17706-029 | |
| UNITED STATES OF AMERICA v. | | Movant *(include name under which convicted)* MICHAEL STEVENSON | |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    United States District Court
    For the Northern District of Iowa
    Eastern Division

    (b) Criminal docket or case number (if you know): 2:18-cr-01023-CJW-MAR-1

2.  (a) Date of the judgment of conviction (if you know): 10/7/2019

    (b) Date of sentencing: 10/7/2019

3.  Length of sentence: 200 Months

4.  Nature of crime (all counts):
    Count 1 -- Conspiracy to Distribute Heroin and Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; and

    Counts 2-5 -- Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

5.  (a) What was your plea? (Check one)
    (1) Not guilty ☑      (2) Guilty ☐      (3) Nolo contendere (no contest) ☐

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)      Jury ☑      Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?      Yes ☐      No ☑

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction? Yes ✓ No ☐

9. If you did appeal, answer the following:

   (a) Name of court: United States Court of Appeals for the Eighth Circuit

   (b) Docket or case number (if you know): No. 19-3224

   (c) Result: Affirmed

   (d) Date of result (if you know): 11/4/2020

   (e) Citation to the case (if you know): United States v. Stevenson, 979 F.3d 618 (8th Cir. 2020)

   (f) Grounds raised:
   I. WHETHER THE DISTRICT COURT ERRED IN DENYING MR. STEVENSON'S BATSON CHALLLENGE TO THE GOVERNMENT'S STRIKE OF THE ONLY BLACK PROSPECTIVE JUROR?

   II. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO ANSWER THE JURY'S QUESTION REGARDING THE DIFFERENT TIME FRAMES FOR COUNTS 2 AND 3?

   III. WHETHER THERE WAS SUFFICIENT EVIDENCE TOSUBMIT COUNT 1 (CONSPIRACY) AND COUNT 2 (FEBRUARY 1, 2017, DISTRIBUTION) TO THE JURY?

   (g) Did you file a petition for certiorari in the United States Supreme Court? Yes ☐ No ✓

   If "Yes," answer the following:

   (1) Docket or case number (if you know):

   (2) Result:

   (3) Date of result (if you know):

   (4) Citation to the case (if you know):

   (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐ No ✓

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court:
    (2) Docket or case number (if you know):
    (3) Date of filing (if you know):

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐      No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐      No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:      Yes ☐      No ☐

(2) Second petition:      Yes ☐      No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** INEFFECTIVE ASSISTANCE OF PRETRIAL COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Pretrial counsel's failure to:

(1) Conduct an adequate and independent pretrial investigation including investigating and interviewing William Bower, KennyBirch,Justin Harris ("Harris"), Emily Nelson or any witness in the government's case file;

(2) File Substantive Motions As Requested by Stevenson Such As A Motion to Dismiss the Indictment or the Conspiracy Charge; and

(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal. They are raised in a 28 U.S.C. § 2255 proceeding.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☑

    (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial Counsel's failure to:

(1) Subpoena Harris As A Defense Witness for Trial;
(2) Include the Police Report Between Investigator J. Slight and Harris to substantiate his Opiate Use from Drug Prescription and Culpability in the Adam Birch Overdose;
(3) Subpoena Phone Records From the Harris' Service Provider Due to His contact number appearing Consistently in Victim's Call Log That Correspond with Her Efforts of Aquiring Drugs the Day of the Overdose;
(4) Admit Victims' Phone tolls for both of his phones at trial to substantiate Harris-Birch Buyer Seller Relationship
(5) Failure of Counsel to Request the Court to Give a Specific Unanimity Instruction; and
(6) Failure to Subpoena expert witness that would have undermined officer Leitzen's hot spot theory or properly challenge hot spot theory with trial chemist corroboration.

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☐

AO 243 (Rev. 09/17)

(2)  If you did not raise this issue in your direct appeal, explain why:
Claims of ineffective assistance of counsel are not generally raised on direct appeal. They are raised in a 28 U.S.C. § 2255 proceeding.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐   No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?
Yes ☐   No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?
Yes ☐   No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐   No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

---

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Appellate counsel's fialure to raise stronger issues preserved at Stevenson's trial such as:

(1) District Court's Admission At Trial of Hearsay Evidence;

(2) The Drug Quantity;

(3) Enhancement for Obstruction of Justice; and

(4) Adjustment for Aggravated Role, Rather That Raise the Three (3) Weaker Issues He Raised, Which Were Easily Affirmed on Appeal, Deprived Stevenson of Effective Assistance of Appellate Counsel and A Fair and Meaningful Appellate Review.

---

(b)  **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2)  If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal. They are raised in a 28 U.S.C. § 2255 proceeding.

---

(c)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

---

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** N/A
_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☐

    (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: .

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Grounds One, Two and Three have not been previouisly raised or persented in federal court. The reason that these grounds have not been previously presented is because all of these grounds are based on claims of ineffective assistance of counsel, which is properly raised in a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?        Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:
Jill M. Johnson, 222 Third Avenue SE, Suite 290, Cedar Rapids, Iowa 52401

(b) At the arraignment and plea:
Jill M. Johnson, 222 Third Avenue SE, Suite 290, Cedar Rapids, Iowa 52401

(c) At the trial:
Cory Goldensoph, 425 Second Street SE, Suite 803, Cedar Rapids, Iowa 52401

(d) At sentencing:
Michael K. Lahammer, 425 2nd Street SE, Suite 1010, Cedar Rapids, Iowa 52401

(e) On appeal:
Michael K. Lahammer, 425 2nd Street SE, Suite 1010, Cedar Rapids, Iowa 52401

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☑        No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐        No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes ☐        No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely filed within the one-year statute of limitations under AEDPA because Stevenson's judgment and affirmation of his direct appeal was on November 4, 2020. He also has another ninety (90) days after November 4, 2020, the time in which he could have filed a Petition for a Writ of Certiorari to the Supreme Court of the United States, to file his Motion under 28 U.S.C. § 2255. See Clay v. United States, 537 U.S. 522 (2003) (For the purpose of starting the clock on § 2255's one-year limitation period, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction, Pp. 527-532.); Taylor v. United States, 792 F.3d 865 (8th Cir. 2015).

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, Stevenson respectfully requests that the Court grant the following relief:

Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record and/or any other relief to which this Court deems that he may be entitled.

Respectfully submitted,

*michael Stevenson*

MICHAEL STEVENSON
REG. NO. 17706-029
FCI OXFORD
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
OXFORD, WI 53952

## DECLARATION OF MICHAEL STEVENSON

I, Michael Stevenson, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: NOV, 24 , 2021          *michael Stevenson*

MICHAEL STEVENSON

IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL STEVENSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Civil No. 2:21-cv-_____ |
| | ) | Crim No. 2:18-cr-01023-CJW-MAR-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, MICHAEL STEVENSON ("Stevenson"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

Stevenson is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562 (1994).

1

## II. <u>STATEMENT OF THE GROUNDS FOR REVIEW</u>

A.    Whether pretrial counsel's failure to: (1) Conduct an adequate and independent pretrial investigation including investigating and interviewing William Bower, Kenny Birch, Justin Harris ("Harris"), Emily Nelson or any witness in the government's case file; (2) File substantive motions as requested by Stevenson such as a motion to dismiss the indictment or the conspiracy charge deprived Stevenson of effective assistance of pretrial counsel and a fair and reasonable independant pretrial investigation and preparation for jury trial.

B.    Whether trial counsel's failure to: (1) Subpoena Harris as a defense witness; (2) Submit police report between investigator J. Slight and Harris to substantiate his opiate used from drug prescription and culpability in the Birch overdose; (3) Failure of counsel to request the court to give a specific unanimity instruction; (4) Subpoena phone records from the Harris' Service Provider due to his contact number appearing consistently in victim's call log that correspond with his efforts of acquiring drugs the day of the overdose; (5) Submit phone tolls for both of Birch's phones to substantiate Harris-Birch buyer-seller relationship; and (6) Failure to subpoena expert witness that would have undermined officer Leitzen hot spot theory or properly challeng hot spot theory with trial chemist corroboration. Deprived Stevenson of effective assistance of trial counsel and a fair and reliable jury verdict.

C.    Whether appellate counsel's failure to raise stronger meritorious issues preserved at Stevenson's trial on dirct review such as: (1) Court's admiaaion at trial of hearsay evidence; (2) Drug Quantity; (3) Enhancement for obstruction of justice; and (4) Adjustment for aggravated role, rather that raise the three weaker issues he raised, which were easily affirmed on appeal, deprived Stevenson of effective assistance of appellate counsel and a fair and meaningful appellate review.

### III. STATEMENT OF THE CASE

On June 26, 2018, a grand jury sitting in the United States District Court for the Northern District of Iowa, Eastern Division, returned a five (5) Count indictment charging Stevenson. See Doc. 3.[1] Count 1 charged Stevenson with Conspiracy to distribute Heroin and Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and 846. Id. Counts 2-5 charged Stevenson with Distibution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Id.

On April 23, 2019, a 3-day jury trial commenced. See Doc. 68.

---

[1]    "Doc." refers to the Docket Report in the United States District Court for the Northern District of Iowa, Cedar Rapids Division in Criminal No. 1:18-cr-00060-CJW-MAR-2, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On April 26, 2019, the jury returned a verdict of guilty as to Stevenson on Counts 1-5 of the Indictment. See Doc. 77.

On October 7, 2019, Stevenson was sentenced to a total term of 200 months' imprisonment, 3 years of Supervised Release, no fine or restitution, and a $500 Mandatory Special Assessment Fee. See Docs. 115, 116.

On October 10, 2019, Stevenson timely filed a *pro se* Notice of Appeal. See Doc. 119. On appeal, he argues the evidence was insufficient to convict him of conspiring to distribute heroin and cocaine base [Count 1] and of distributing heroin on or about February 1, 2017 [Count 2]. He further argues the district court erred in rejecting his challenge to the government's peremptory strike of the only prospective juror of color, see *Batson v. Kentucky*, 476 U.S. 79 (1986); and abused its discretion in responding to a question from the jury during its deliberations. On November 4, 2020, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") affirmed Stevenson's sentence and conviction. See *United States v. Stevenson*, 979 F.3d 618 (8th Cir. 2020).

## IV. COGNIZABLE GROUNDS IN 28 U.S.C. § 2255 MOTIONS

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify

4

relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Deltoro-Aguilera v. United States*, 625 F.3d 434 (8th Cir. 2010).

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the

case demonstrate that no relief is warranted. See *Franco v. United States*, 762 F.3d 761 (8ᵗʰ Cir. 2014). "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v.*

6

*Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Eighth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. Defendants have raised ineffective assistance claims concerning counsel's performance prior to trial. See *Kimmelman,* 477 U. S. at 385-90 (1986)(counsel's failure to conduct any pretrial discovery and file timely suppression motion fell below prevailing professional norms); *White v. Roper,* 416 F.3d 728, 732-33 (8th Cir. 2005). Defendants have also raised ineffective assistance claims concerning counsel's performance during trial. See *Armstrong v. Kemna*, 534 F.3d 857 (8th Cir. 2008).

7

Finally, Defendants may raise ineffective assistance claims concerning counsel's performance on appeal. See *Evitts v. Lucey*, 469 U. S. 387(1985)(due process requires effective assistance of counsel during first appeal as of right); *Theus v. United States*, 611 F.3d 441(8th Cir. 2010)(same). Ineffective assistance of counsel claims generally are limited to collateral review and ordinarily will not be considered on direct appeal. See *United States v. Norwood*, 854 F.3d 469 (8th Cir. 2017).

## DISCUSSION

As a preliminary matter, Stevenson respectfully requests that the Court be mindful that *pro se* pleadings are to be construed liberally. See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

Stevenson presents the following grounds for review:

A. **Pretrial Counsel's Failure To: (1) Conduct An Adequate and Independent Pretrial Investigation Including Investigating and Interviewing William Bower, Kenny Birch, Justin Harris ("Harris"), Emily Nelson Or Any Witness in the Government's Case File; (2) File Substantive Motions As Requested by Stevenson Such As A Motion to Dismiss the Indictment or the Conspiracy Charge;**

1. <u>Failure to conduct an adequate and independent pretrial investigation including investigating and interviewing William Bower ("Bower"), Kenny Birch, Justin Harris ("Harris"), Emily Nelson or any witness in the government's case file.</u>

It is well-settled that "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman*, 477 U.S. at 385. Here, Stevenson's first appointed Assistant Federal Public Defender Jill M. Johnston ("Johnston") and second appointed attorney, Cory Goldensoph ("Goldensoph"), neither investigated, nor made a reasonable decision not to investigate, the government's case through discovery. Such a complete lack of pretrial preparation put at risk both Stevenson's right to an "ample opportunity to meet the case of the prosecution" and the reliability of the adversarial testing process. *Id.*

In this case, under any professional norm, Johnston's and Goldensoph's performance were deficient. They failed to investigate and interview any witnesses. As such, Stevenson was unable to discover any evidence pertaining to Adam Birch's ("Birch") whereabouts during the day of the distribution of drugs resulting in his overdose. For his defense, Stevenson needed to establish a time line of places Birch visited and the duration of the visits, to narrow down, when, where, and who he could have purchased the fatal dose of drugs from. Specifically, witness Colin Kelley

9

("Kelly") who picked Birch up off of Angella Street the night before the overdose, which was the same location of the earlier hand-to-hand transaction with Harris. Their deficiencies prevented them from interviewing Kelly and discover who Birch was with when he picked him up that night, for what purpose, and if there was a continuous pattern that resembled that of a drug distribution. Further, Samantha Billmeyer, Birch's older brother's girlfriend, could have been interviewed and shared the contents that was exchanged between her and Birch, for what reason, and if she knew anything pertaining to the source of drugs that caused Birch's overdose. Most damaging was the attorneys negligence of Stevenson's request to investigate and discover inconsistencies in Bower's or Harris' statements of an opiate/heroin user via a criminal history search. Johnston and Goldensoph's failure to conduct an independent investigation and interview witnesses that were vital to Stevenson's defense to find exculpatory evidence deprived him of a competent pretrial investigation in preparation for his jury trial and ultimately a fair and reliable jury verdict (prejudice). See *White v. Roper*, 416 F.3d 728 (8th Cir. 2005), cert. denied, 546 U.S. 1157 (2006)(Counsel was ineffective in failing to investigate and present exculpatory testimony of two witnesses).

Johnston and Goldensoph's acts and omissions easily meet the two prong test under *Strickland* because their performance was deficient and that deficiency

10

prejudiced Stevenson from discovering evidence that could have had an effect on a reasonable jurors decision to convict him. See (Exhibit A) See (Exhibit C)

 2.  Failure to File Substantive Pretrial Motions As Requested by Stevenson Such As A Motion to Dismiss the Indictment Or the Conspiracy Charge.

Johnston and Goldensoph both failed to file any substantive pretrial motions on behalf of Stevenson to determine the strength of the government's case-in-chief. The only motions that Johnston filed was a motion to continue trial [Doc. 17] and her motion to withdraw as counsel [Doc. 27], which was granted.

Goldensoph's performance was also deficient. The only motions that he filed were a motion to continue trial [Doc. 34], which was granted, a sealed motion in limine [Doc. 47], which was granted in part, and a motion to withdraw as counsel [Doc. 55], which was denied.

Because of his attorneys negligence and deficiencies, Stevenson was forced to file *pro se* motions with the Court, including a *pro se* motion for Speedy Trial [Doc. 42], which was denied, a *pro se* motion for discovery [Doc. 53], which was also denied. Both of Stevenson's *pro se* motions were denied because he was represented by counsel and could only be filed by counsel. Of course, counsel refused to file any motion on his behalf even though Stevenson requested that they do so.

11

Motions such as a Motion to Dismiss Indictment; should have and could have been filed by his attorney in; order to test the strength of the government's case against Stevenson. However, the record in this case speaks for itself. The U.S. District Court Docket Report reflects that there were **no substantive pre-trial motions** filed by either Johnston or Goldensoph prior to Stevenson's trial. His attorney;s missed out on a golden opportunity to assess and evaluate the strength of the government's case and the evidence that they had against Stevenson.

FAILURE OF PRE-TRIAL COUNSEL TO FILE 12(b)(6) MOTION TO CHALLENGE THE INFORMATION IN THE COMPLAINT TO DISMISS THE CONSPIRACY IN THE INDICTMENT.

Defendant was charged with conspiracy on the basis of drug addict William Bower's statement, that was a fabricated story he gave Investigator Leitzen in exchange for his release from jail which was successful. This statement was con-cusory and offered no corroboration whatsoever. No corroboration of Brandon the co-conspirator conduct, identity, date, and time to indicate and substantiate drug trafficing agreement with defendant. Not only was there no corroboration of key components in his statement, but his allegations were vague and fail to state an actual person in which defendent could properly prepare a defense against. Or a date and time of conduct the defendant could impeach with exculpatory evidence. William Bower's statement stood on the bare assertions and no support of factual allegations. Most damaging is that William Bower's statement presented no corroboration that a buyer-seller relationship existed between him and Stevenson other than general information which could have been learned in other various ways. Had this vague information in the complaint been properly challenged the defendant would of been able to show the vague allegations fail to specify a co-conspirator, date and time of conduct and any corroboration to properly prepare a defense against the conspiracy count in the indictment. Which is apparant when Bower failed to indicate the identity of the co-conspirator to

Leitzen in his initial statement, but evidence of Andre Johnson as the co-conspirator was later presented at sentencing which denied the defense the right of Notice of Changes. Failure of counsel to file motion to challenge the information for the conspiracy count denied defense counsel at a critical stage in the proceedings.

In essence, there was an actual or constructive denial of the assistance of counsel altogether in the pretrial phase of the proceedings (deficient performance). Prejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage of the proceedings. See **United States v. Cronic**, 466 U.S. 648, 659 (1984). See also, **Sweeney v. United States**, 766 F.3d 857 (8th Cir. 2014). In **Cronic**, the Supreme Court stated that prejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage [of the proceedings]. See **Cronic**, 466U.S. at 659.

In this case, Stevenson was forced to file his own **pro se** pretrial motions because of his attorneys deficiencies and refusal to do so. Under **Cronic**, Stevenson had a "complete denial of counsel." His attorneys failed to put the government's case to any adversarial test in representation of Stevenson. Because of the lack of pretrial investigation and pretrial motions, Goldensoph was wholly unprepared to take this case to trial. It is no surprise as to the result of his trial with such a deficiency in preparation and lack of zealous representation.

Accordingly, this Court should hold an evidentiary hearing to expand the record in this case and resolve facts in dispute between the parties.

B.   Trial Counsel's Failure To: (1) Subpoena Harris As A Defense
Witness for Trial; (2) Include the Police Report Between
Investigator J. Slight and Harris to Substantiate His Opiate
Use From Drug Prescription and Culpability in the Adam Birch
Overdose; (3) Subpoena Phone Records From the Harris' Service
Provider Due to His Contact Number Appearing Consistently in
Victim's Call Log That Correspond with Her Efforts of Acquiring
Drugs the Day of the Overdose; (4) Admit Victim's Phone Tolls
for Both of His Phones At Trial to Substantiate Harris-Birch
Buyer Seller Relationship Deprived Stevenson of Effective
Assistance of Trial Counsel and A Fair and Reliable Jury Verdict;
(5) Failure to Object to Jury Instructions and Give Specific
Unanimity Instructions to Clear Jury Confusion that Resulted
in a Non-Unanimous Jury Verdict; and (6) Failure to Subpoena
Expert Witness That Would Have Undermined Officer Leitzen's
Hot Spot Theory or Properly Challenge Hot Spot Theory with Trial
Chemist Corrobvoration.

1.   Failure to Subpoena Harris As A Defense Witness for Trial.

Explain to the court his history as an opiate user which resulted in him
using heroin and enlightening the court on his characteristics of an heroin
user to make the fact more probable that him and Birch had a relationship on
the basis of Heroin. This was consistent with Hedie Woodyard when she told in-
vestigators that Harris and her brother Birch made a hand-to-hand transaction,
but was unable to identify the actual contents transferred due to Birch's
secretive behavior. On's suspicion of Harris using Heroin could be further co-
rroborated by Harris being a subject in the Birch overdose investigation that
led to his home being searched, and officers finding a key element of a heroin
user. Which was an opiate prescribed via oxycontin by Harris' doctor. Also
Harris could have testified as to the nature of Harris and Birch's relationship
and the purpose of their hand-to-hand transaction on both occasions of Feb. 1,
2017. To show the Jury their interactions that correspond with phone history
from Birch's phone and further show the characteristics of Harris as a heroin
distributor and substantiate a drug distribution between Harris and Birch that
resulted in Adam Birch's overdose. Both interactions transpiring on Angella St.
which is Harris' indicated address made it imperative that Harris be brought to
court to give testimony on those hand-to-hand transactions and other previous

interactions consistent with the effects of fenanyl and Kelley Collin's statement. There are many thin;gs that indicate Harris incriminating conduct was sufficient for defense counsel to subpoena Harris for testimony. Failure to subpoena Harris for trial disallowed Defendant to present Harris' characteristics of a middle-man/distributor and emphasize the pattern of completed drug distribution from Harris' phone to substantiate Harris distribution to Birch, resulting in his fatal overdose. That prejudiced the defendant at trial. See (Detention hearing P.17,L.14-19)

    2.   <u>Failure to Include the Police Report Between Investigator J. Slight and Harris to Substantiate His Opiate Use From Drug Prescription and Culpability in the Adam Birch  Overdose.</u>

During the investigation of Birch's overdose, Harris had the most relevancy to the case as his name and actions were consistently referenced when investigators questioned people who were in direct contact with Birch the day of his fatal drug distribution. Most notably, Kenney Birch, Sr., told investigators that Harris would be the first place to start to look in regards to the source of drugs that resulted in Birch's overdose, which led to an interview with police with Harris. This led to a search conducted at Harris' residence and inquiry into pill bottles that were found and later identified by harris as oxycoting pills that were pre-scribed to him by his doctor. The police interview revealed that Harris was an opiate user and how prescription pain users eventually resort to cheaper opiates such as heroin due to the expense of the continued use of prescribed pain pills. Not only would the police interview have high lighted the likelihood of Harris using heroin, but it would have also contradicted J. Slight's statement made on cross-examination when he was asked "if he was left with the impression Harris used heroin." Failure to admit the police interview into evidence at trial pre-vented the jury from considering Harris-Birch's buyer-seller relationship similar to Walgram/Birch's buyer-seller relationship and the likelihood that Birch used Harris as his source for heroin that resulted in his death not Stevenson.
See (Tr Trn P.303,L.22 - Pg.304,L.20)

3. ### Failure to Subpoena Phone Records From the Harris' Service Provider Due to His Contact Number Appearing Consistently in Victim's Call Log That Correspond with Her Efforts of Acquiring Drugs the Day of the Overdose.

It was revealed at trial and by Birch's phone tolls that Harris had been in contact with Birch at least two times on the day of the distribution of drugs resulting in his overdose. Those phone tolls correlate to Birch's drug activities that same day in making a hand-to-hand drug transaction with Harris when he first got off work as stated by Heidi Woodyard, and then later in the evening getting picked up on Angella Street at the same location where the hand-to-hand trans- action transpired earlier by Kelly. These consistencies correlate with the effects of fentanyl, where fentanyl is 100 times stronger than heroin, but last only for a short time. As such, there is a substantial likelihood that Birch puarchased the heroin/fentanyl from Harris when he got off work, but had to get more drugs due to the effect of fentanyl wearing off. Therefore, he needed to buy more drugs due to the short term; of the effect of the fentanyl. Kelly's statement corroborated that Angella Street is where he picked Birch up later that day.

By subpoenaing Harris' phone records and text messages, Stevenson could have shown Harris hand-to-hand transaction with Birch on Feb. 1, 2017 and the recovered oxycotin from officer J. Slight of Harris' home was more sufficient for further investigation. It is common sense for defense counsel to conduct further investigation into subjec when conscous of certain lines of investigation. After the hand-to-hand transaction it was imperative counsel look behind the scenes to learn from their dialogue the true intent of their transaction, which could have been revealed by Justin Harris's phone records.

Goldensoph's failure to subpoena Harris' phone records was deficient per- formance. Stevenson was prejudiced because it would have shown that the completed drug transaction on Feb. 1, 2017 between Harris and Birch, which led to his adeath. This would have created reasonable doubt in a reasonable juror's mind

See (EXHIBIT A) (DCT hearing Pg. 31, L.18-31/P. 34 L. 5-9)

regarding where Birch purchased the drugs that ultimately led to his overdose.

4.   Failure to Admit Birch's Phone Tolls for Both of His Phones
     At Trial to Substantiate Harris-Birch Buyer Seller Relationship

Goldensoph also failed to submit at trial Birch's phone records for both of his phones. During preparation for trial, Stevenson requested that Goldensoph submit for admission to the Court as evidence Birch's phone tolls and text messages. He failed to do so (deficient performance). Had he admitted these records as evidence, it would have shown the characteristics of the tolls that correspond with the allotted time for a drug distribution to substantiate the Harris-Birch buyer-seller relationship. This evidence was substantial because it would have corroborated the two times that Harris and Birch met to do the drug transactions on the day of the distribution resulting in Birch's OD. It would also show that Harris was contacted when Stevenson was unavailable to pick up drugs because Birch was a daily user. It would further show the pattern in which Birch contacted Justin Harris to obtain drugs from Angella st., the same street he did the earlier hand-to-hand transaction, witnessed by Heidi Woodyard. Had this evidence been submitted at trial, it would have shown in his call log the day-to-day distributions and how Harris provided the drugs to Birch. Had this been argued before the jury, it could have created reasonable doubt as to who Birch purchased the drugs from that ultimately ended in his death.

Goldensoph's performance was deficient under any professional norm for not submitting this evidence. It could have been a game changer because a juror of reason would have reasonable doubt that Stevenson provided the drugs to Birch that resulted in his fatal OD. As such, he was prejudiced for this evidence not being submitted to the Court. See (Exhibit b)

5.     <u>Ineffective Assistance of Trial Counsel For Failing to Request The Court to Give a Specific Unanimity Instruction.</u>

During Defendant's, Mr. Michael Stevenson's April 23, 2019, jury trial, trial counsel, Mr. Cory Goldensoph failed to make a request for the court to give a specific unanimity instructions to the jury.

In a case involving multiple counts of similar conduct, at or near the same time frame. It may be possible to protects the defendant's rights by requesting and having the judge give a specific unanimity jury instruction.

In Mr. Stevenson's case, the jurors voiced their concerns of confusion toward count two; "On or about February 1, 2017, the defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of heroin." Along with the concerns of count three; "the defendant on or about February 2, 2017, knowingly and intentionally distributed a mixture or substance containing a detectable amount of heroin."

As the record in this case demonstrates; during deliberation, the jury sent out a question. (DCD 78). The jury asked:

> "Can we get clarification of 'on or about?' Ex... 2-3 has window around midnight, or within a 1-2 day period. If it is in reference to days then distinction between cound 2 & 3 with overlapping days?"

DCD 78. The District Court responded,

> "I received your note, a copy of which is attached. Please re-read the instructions and continue to deliberate." DCD 78-1.

The trial record demonstrates the complications of separate counts charged in count 2 and 3. Where the time frames of the hours, "window around midnight, or within a 1-2 day period," because of the definition of on or about caused confusion to the jury in determining rather count 2, February 1, 2017, and count 3, February 2, 2017, made the evidence complicated and created uncertainty and confusion regarding the basis for Mr. Stevenson's conviction.

Trial counsel's performance was deficient for failing to request the court to give specific unanimity instruction in Mr. Stevenson's case where the evidence

in the charged counts was similar conduct of the distribution of heroin. Thus causing complications and creates an uncertainty and confusion regarding the basis for the conviction. A general unanimity instruction will not suffice when the possibility of such jury confusion exist.

Trial counsel's deficient performance prejudice Mr. Stevenson's trial defense and the outcome of the jury trial. Counsel's failure to request a specific unanimity instruction had effect of the jury using the evidence from Mr. Stevenson's distribution in count 3, in which Mr. Stevenson conceded that he was distributing heroin, this evidence alone could have brought the jury to the conclusion that Mr. Stevenson distributed the heroin in count 3 on February 2, 2017, and further concluding that Mr. Stevenson also distributed the heroin on February 1, 2017, that resulted in the death of Adam Birch.

The district court found "that upward departure is warranted" for the defendant's distribution of heroin to Adam Birch that caused his overdose.

[The Court]: "I find the government's request for a 2-level upward departure to be reasonable. I could very easily, and I think the case law would support it, find an upward departure to the statutory maximum for one of the counts, which is 20 years."

Mr. Stevenson was an offense level 31 in the criminal history category III, guideline range of 135-168 months. The conviction of count 2 that no specific unanimity instruction was given to the jurors resulted in Mr. Stevenson's conviction on count 2 in which Mr. Stevenson received a 2 point upward departure in his sentence resulting in an offense level 33 in the criminal history category III, guideline range of 168-210 months. Mr. Stevenson received a 200 month sentence. The difference of 32 months had Mr. Stevenson not been convicted of count 2 and no upward departure received.

Counsel's deficient performance prejudice Mr. Stevenson's trial defense and the outcome of the juries decision to convict Mr. Stevenson of count 2 distribu-

tion of heroin, which resulted in an upward 32 months above his sentencing guide-
line range of 135-168 months. Demonstrating ineffectiveness of trial counsel.

6. **Failure to Subpoena Expert Witness That Would Have Undermined Officer Leitzen's Hot Spot Theory or Properly Challenge Hot Spot Theory With Trial Chemist Corroboration.**

The victim Adam Birch overdose off of heroin/fentanyl that was alleged to have been distributed by Stevenson. Defendant maintains he did not distribute those drugs that resulted in his OD. Defendant proceeded to trial to prove his innocencethrough drug reports of his self-admitted control buys that tested positive for heroin and absent any traces of fentanyl. The government presented testimony through officer Leitzen to rebuttal the contention that the heroin distributed in defendant's conrolled buys had no traces of Fentanyl in it. Leitzen made an assumption to the drug which he had no accuracy in making to the makeup of the drug he did not test, and only a limited knowledge on how drugs interact with each other made him inelegible to give theory on hot spot. Leitzen made an assumption in aid of government cross-examination that it was a possibility that a hot spot was present in the batch of drugs that contained a lot, a little, and no fentanyl at all in different portions of the heroin. This gave the Jury the impression that it was[NE] fentanyl in the heroin recovered from the defendant's controlled buys because of the hot spot, but was present in the drug recovered from the victim that was allegedly distributed by the defendant. (one 2 Hotspot) Defense counsel emjphasized and enlightened the court on the half of a gram of heroin recovered from the controlled buy on Feb. 2 and the small amount of heroin that was recovered off of the victim the day of the overdose. Goldensoph made the notion that in a small amount of heroin recovered from the victim we were able to find fentanyl within that heroin, but when we took the heroin from the Feb. 2 conrolled buy that was ten times more in size we weren't able to find any traces of fentanyl within the makeup of that drug. The hot-spot theory that was given was inaccurate and not given in the knowledge and experience of an expert. This deficiency allowed the jury to make inferences pertaining to Leitzen's hot-spot theory that their theory of a hot-spot was true and correct

See (Exhibit D)

and could be applied in the defendants case. Which off-set defendant's contention that there was no possibility he distributed the drug that resulted in victims OD. Because his drugs within his controlled buys had no fentanyl in it. Failure to subpoena an expert witness on chemicals disallowed the defendant the opportunity to present evidence pertaining to the function of chemicals in heroin/fentanyl and the actual role hot spot played and the amount of weight to give Leitzen's hot spot theory that would of been minimal had an expert opinion would of been introduced at trial. In the alternative, defense counsel could have properly challenged Leitzen's hot spot theory by cross-examining the chemist to reveal the true application of a hot spot pertaining to the drugs in defendant self-admitted control buys, versus the fentanyl found in the small amount of heroin recovered from the victim on the day of the overdose. To show the jury that the hot spot had no effects on defendant drug reports consisting of heroin that was easier to find another chemical in due to its size in comparison to the small amount recovered from the victim. Failure for defense counsel to indicate expert hot spot theory application for the jury allowed the government to present evidence which discounted defendant contention that none of the drugs recovered from the controlled buys had any fentanyl in them. To further corroborate that defendant didn't distribute drugs that resulted in the victim fatal overdose.

C. Appellate Counsel's Failure to Raise Stronger Meritorious Issues Preserved At Stevenson's Trial on Direct Review Such As: (1) District Court's Admission At Trial of Hearsay Evidence; (2) the Drug Quantity; (3) Enhancement for Obstruction of Justice; and (4) Adjustment for Aggravated Role, Rather That Raise the Three (3) Weaker Issues He Raised, Which Were Easily Affirmed on Appeal, Deprived Stevenson of Effective Assistance of Appellate Counsel and A Fair and Meaningful Appellate Review.

1.   Failure to Raise District Court's Admission At Trial of Hearsay
     Evidence.

Appointed appellate counsel, Michael Kevin Lahammer ("Lahammer"), failed

to raise on appeal the District Court's error in admitting co-conspirator Emily

Nelson's ("Nelson") hearsay evidence at trial. Goldensoph objected to the hearsay

testimony Nelson at trial. The government claimed that it was Rule 801(d)(2)(E)

testimony. The District Court overruled Goldensoph's objection and conditionally

allowed the testimony under the Bell procedures. After the close of evidence, the

District Court heard arguments and ruled on the co-conspirator Nelson's statement

provided regarding someone else getting rid of heroin for defendant. In rationalizing

its finding, the Court stated that:

> ". . . under the Bell analysis, I find that it was a statement made -- If it
> is hearsay, I find that it's a statement made by a co-conspirator during
> the course of the conspiracy and in furtherance of the conspiracy. So that
> will be my Bell ruling."

See Doc. 105 at 544-45.

The District Court first noted that "It's the underlying statement that would

have been offered if there is even a truth in the matter asserted, the truth being that

the defendant is the source of supply for heroin." *Id.* at 544.

If that is the case, the District Court's error was that the testimony was hearsay

upon hearsay and that the testimony was not substantive evidence that should have

been submitted to the jury with a limiting jury instruction. The District Court apparently reasoned that the statement by the unidentified person allegedly distributing for Stevenson was a statement made by a co-conspirator during the course of the conspiracy. However, the statement was not made directly by an alleged co-conspirator to Nelson. It was made to a friend of Nelson, who in turn then made the assertion to Nelson. There is not a hearsay exception that adheres to that statement. Hearsay upon hearsay is admissible only if each part of the combined statement conforms with an exception to the Rule. See *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978) holding:

> " It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) **that the defendant and the declarant were members of the conspiracy**; and (3) that the declaration was made during the course and in furtherance of the conspiracy. See *United States v. Lambros*, 564 F.2d 26, 30 (8th Cir. 1977); *United States v. Frol*, 518 F.2d 1134, 1136-37 (8th Cir. 1975); *United States v. Sanders*, 463 F.2d 1086, 1088 (8th Cir. 1972); Fed.R.Evid. 801(d)(2)(E)."

(Emphasis added). *Bell*, 573 F.2d at 1043.

It should also be taken as a most serious moment that at the sentencing hearing, the prosecutor, John H. Lammers ("Lammers"), stated that "I would admit or stipulate that Emily Nelson was a wreck and her testimony was all over the board." See Doc. 123 at 65. As such, her testimony was, at a minimum, not credible and unreliable even in the government's view.

Meanwhile, however, the government's position on this issue is that the District Court's admission of Nelson's statement was harmless and had a slight influence on the jury. However, the government's position in this matter was wrong because the evidence was offered as substantive evidence and tainted the jury fact-finding process adversely affecting the outcome of the trial. Goldensoph believed that it was too late to remedy the matter. However, the District Court corrected him and stated that "one of the remedies, if it's not a correct co-conspirator statement, is to either give further instructions to the jury or to do a mistrial. And so it's not too late." See Doc. 105 at 541.

Accordingly, Goldensoph's performance was deficient because he failed to further object or move the Court for the limiting instruction or for a mistrial. As such, the government's position that the error was harmless was wrong and contradicted the proper remedy for admitting an incorrect co-conspirator's hearsay upon hearsay statement that was based on a friend's statement not a co-conspirator's statement, which affected the outcome of the trial. A new trial should be granted.

2-4. <u>Failure to Challenge the Drug Quantity; Enhancement for Obstruction of Justice; Adjustment for Aggravated Role; and Upward Departure.</u>

Lahammer, who was also sentencing counsel, failed to raise issues on appeal that were objected to at sentencing and preserved for appellate review. The

sentencing judge, C. J. Williams, overruled every objection raised by Stevenson at sentencing. In essence, he adopted the PSR as his own. He also found that even though Stevenson had a concern for his customers and that there was not a but for causation, he kept selling heroin after Birch's death. As such, he found that his conduct supported an upward departure under USSG § 5K2.1. See Doc. 123 at 69.

Drug Quantity

At sentencing, Stevenson objected to paragraphs 13, 15, 16 and 18 of the PSR and the base offense level of 26 attributed to him for involvement with 428 grams of heroin and 10 grams of cocaine base. He argued that the drug amounts utilized in the PSR represented harsh and unsupported estimations of the amounts of drugs for which he was involved. At sentencing, Stevenson argued that he should be held responsible for 45 grams of heroin and 10 grams of cocaine base, resulting in a converted drug weight of 78.71 kg, and a base offense level of 20. The Court overruled his objection and ruled in favor of the PSR's 428 grams, which placed him at level 26. It should be noted that all of the drug quantity estimates in the PSR were based upon information from inherently untrustworthy cooperating witnesses, all of whom had engaged in illegal and felonious activity, as well as upon unsupported estimations. These individuals were looking for some kind of break in their own cases for their cooperation with the government. There was not any drug seizure. They were

26

<u>all</u> estimates which largely did not take into consideration the time that Stevenson served in jail.

## Enhancement for Obstruction of Justice

At sentencing, the Court found that Stevenson had obstructed justice because of some alleged threats that he had made to John Walgram. Stevenson stated he never made any threat to Mr. Walgram. In fact when I saw another co-operating witness (Eric Steve) in the prison chapel I notified my then attorney Jil Johnston of the event. Than I removed myself befor anything could transpire. Furthermore, I made the U.S. Marshals and my attorney aware that John Walgram would walk past and taunt me with face gestures. So I asked if I could be moved to another part of the jail. Nothing happened at that momen, but eventually I was moved from Linn County to Iowa County. Even though my attorney objected to the witness intimidation he failed to adequately and thoroughly argue my defense against this enhancement. First and most important I never conceded to the fact of making that threat at all for Mr. Lahammer not to challenge the threat in its entirety instead of its intent. I told Mr. Lahammer that I never made that threat because the terminology used in the threat is something an african-american male wouldn't use in his lingo. That the statement made would more fit the lingo of a caucasian male. So him making that statement that that wasn't my intentions to make a threat was completely contradicting from the refuting argument I intended he make at the sentencing proceeeding. Because of the ob-struction of justice enhancement, Stevenson's total offense level was increased by two (2) levels. This actually had a 5 level swing because it eliminated his request for acceptance of responsibility.

## Adjustment for Aggravated Role

The Court adjusted Stevenson's offense level by three (3) levels for an aggravated role as a leader/organizer. The Eighth Circuit has determined factors that must be considered when determining whether a defendant was an organizer

27

or leader. See United States v. Irlmeier, 750 F.3d 759 (8th Cir. 2014). The key factors in this analysis are control and organization. Id. at 764.

In this case, the enhancement was not warranted because the PSR and the Court did not provided any reliable evidence to prove that the Stevenson controlled or directed other participants in the offense. Without the requisite showing of control, the §3B1.1 enhancement should not apply herein. Stevenson never had people "working for him." He denied ever having another person deliver any drugs for him, either before or after the death of Birch.

<u>Upward Departure</u>

The main reason that the Court upward departed at sentencing was because of the death of Birch. Based on the previous arguments above, Stevenson has always maintained that he did not distribute heroin to Birch on February 1, 2017. It has always been his position that the evidence in this case was not shown beyond a reasonable doubt that he distributed heroin causing the overdose death of Birch. It is undisputable that Birch was a heroin addict who apparently used heroin on a daily basis. Birch, like other heroin addicts as well as heroin distributors, must make a risky assumption that heroin that is available for distribution is just that - heroin - and not containing other highly dangerous controlled substances such as fentanyl or the like. Heroin users typically seek out their drug through anyone and everyone with access to the drug, and when one source is "dry" will always have another source or multiple sources readily available to fill their need for the drug. Few, if any, distributors of

29

heroin knowingly include a potentially fatal drug laced into their product. It was a tragedy that Birch overdosed, but Stevenson maintains that it was not his distribution of heroin that caused his death.

Accordingly, the upward departure was not warranted and should not have been assessed to Stevenson.

## VI. CONCLUSION

For the above and foregoing reasons, Stevenson's conviction and sentence should be vacated for a new trial or to allow him to plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary to further prove his claims, resolve facts in dispute between the parties and to expand an incomplete record.

Respectfully submitted,

Dated: November 24, 2021

_michael Stevenson_
MICHAEL STEVENSON
REG. NO. 17706-029
FCI OXFORD
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
OXFORD, WI 53952

30

APPENDIX OF EXHIBITS IN SUPPORT OF MEMORANDUM (2255)

## SUMMARY OF EXHIBITS

**EXHIBIT A:** Defendant trial counsel indicating his reasoning for not calling any witnesses at trial. Also his statement on why he wasn't able to retrieve text/ and phone records of a key witness relating to the victim overdose.

**EXHIBIT B:** Information pertaining to victim service provider to substantiate claim of trial counsel inability to add victim's phone records for both of his phones into exhibits of evidence for trial.

**EXHIBIT C:** Evidence pertaining to Goldensoph awareness of Birch whereabouts to contradict the statement that calling witnesses would highlight a block of time at trial.

**EXHIBIT D:** Goldensoph also indicated that we will have a chemist at trial who will be able to identify the fentanyl in drugs, and have expert knowledge about the makeup of drugs but fail to distinguish Leitzen hot spot theory through the chemist to give proper weight to evidence at trial.

**ATTORNEY AT LAW**

Web: www.goldensophlaw.com
Email: cory@goldensophlaw.com

425 Second St. SE, Suite 803
Cedar Rapids, Iowa 52401
Telephone: (319) 364-5525
Facsimile: (319) 286-1137

April 12, 2019

Michael Stevenson
Linn County Correctional Facility
P.O. Box 608
Cedar Rapids, IA 52406

Re:    United States v. Michael Stevenson
          Case No. 18-CR-1023

Dear Michael:

After much careful thought, I've decided not to call any witnesses in your case. The only reason why I would have called them would have been to establish where Mr. Birch was on the evening of February 1, 2017. The issue with that though is that there would be an hour and 40-minute block of time in which I could not identify where Mr. Birch was and because of that, I don't believe the testimony of the witnesses would be helpful, as it would just highlight that hour and 40-minutes.

This decision is separate and distinct from whether or not you would testify, that would be solely your decision and my recommendation would certainly be that you didn't testify, as the government will then, of course, be allowed to cross examine you and I don't anticipate that going well.

I also want to add into the letter, you've also requested that I obtain the phone records for Justin Harris, the text messages for Justin Harris for the time around February of 2017. To be perfectly honest, I'm not entirely certain how I would go about doing that, as I don't know Mr. Harris' cell phone provider. What is more, we are now about a week out from trial and frankly, I am busy preparing your trial to be looking "possible" evidence. Further, it is very unlikely that any cell phone company would still have those phone records still available. So, at this point I am not going to be seeking those text/phone records.

Additionally, you should know that U.S. Assistant Attorney, Jack Lammers has given us until close of business on Monday, April 15, 2019 to accept the plea agreement. If you decline to accept the plea agreement by then, he will no longer agree to dismiss Counts I and II and allow you to plead to just Counts III, IV and V.

Exhibit A

Please confirm receipt of this email.

Attached is the subscriber's information for MDN:

**5632133018**

The file has been encrypted, you will receive a separate email with the password shortly.

**In addition, please contact Sprint Subpoena Compliance for all other information: Call Records, GPS location, towers etc/**
**Sprint Subpoena Compliance**
Sprint Corporate Security
MAILSTOP: KSOPHM0216
6480 Sprint Parkway
Overland Park, KS 66251
Attention: Tom Koch
        Or
FAX (preferred): 816-600-3111
**Subpoena Compliance Hotline—800-877-7330 or 913-315-0660. Select appropriate prompts.** These numbers are available during the business hours of 7 am – 5 pm, Monday through Friday, CST, but you may leave a message during non-business hours

Regards,

Maybell Kelly
Compliance Director



CONNECTING AMERICA
499 E SHERIDAN ST, STE 400
DANIA, FLORIDA 33004

1

**ATTORNEY AT LAW**

Web: www.goldensophlaw.com
Email: cory@goldensophlaw.com

425 Second St. SE, Suite 803
Cedar Rapids, Iowa 52401
Telephone: (319) 364-5525
Facsimile: (319) 286-1137

January 23, 2019

Computer Forensic Services
Mark Lanterman
601 Carlson Parkway
Suite 1250
Minnetonka, MN 55305

Re:    United States v. Michael Stevenson
       Case No. 18-CR-1023

Dear Mark:

Please find enclosed the thumb drive for Michael Stevenson's case. I previously emailed Shawn a copy of the Order approving our request for a $2,500.00 retainer to have you help us out with this case.

On the thumb drive are two files. The one that's labeled Michael's phone is the information that I have for my client, Michael Stevenson's phone. This would include the phone cell tower location information. The other file that is on here is the Cellbrite download of Adam Burch's phone.

The federal government has alleged that on February 1, 2017, Mr. Stevenson sold Mr. Burch some heroin and on February 2, 2017, Mr. Burch unfortunately died as a result of a drug overdose. Mr. Stevenson maintains that he did not sell Mr. Burch heroin on February 1, 2017 and that his phone records would prove that. What we would like to do is plot where Mr. Stevenson was for February 1, 2017 and compare it to the known whereabouts of Mr. Burch on that same day. To the extent that you are able to get the location of Mr. Burch's phone on that day from the Cellbrite download, that would be fantastic. But, in addition to that we do have some testimonial evidence as to where he would have been on that particular day. So, we can utilize that information to compare it to where Mr. Stevenson was, if need be. When you are ready for it, I can provide you with the testimonial evidence as to where Mr. Burch was on February 1, 2017.

Exhibit C

# CORY GOLDENSOPH P.C.

## ATTORNEY AT LAW

Web: www.goldensophlaw.com
Email: cory@goldensophlaw.com

425 Second St. SE, Suite 803
Cedar Rapids, Iowa 52401
Telephone: (319) 364-5525
Facsimile: (319) 286-1137

April 8, 2019

Michael Stevenson
Linn County Correctional Facility
P.O. Box 608
Cedar Rapids, IA 52406

Re: United States v. Michael Stevenson
Case No. 18-CR-1023

Dear Michael:

Please find enclosed some email communications that I've had with AUSA Jack Lammers on April 8, 2019. You'll see among other things I did get contact information for various people. These are people that I may possibly call as witnesses.

You'll also see that there is some communication as to the video. I think it's important that the video be presented at trial to show that the heroin that Mr. Birch was using that evening came from a type of baggie that was not used by you. You'll see that I'm not objecting to him simply calling one chemist and introducing all of the Department of Criminal Investigation Reports. As it turns out, I am glad that there is going to be a chemist testifying as I want to point out that often times if there is fentanyl in a substance that they are testing, they are able to identify that fentanyl and the heroin that Justin Harris purchased from you on February 2, 2017 did not have any fentanyl in it and that is obviously different than the heroin that Mr. Birch used on the evening that he passed away. That heroin does have fentanyl in it, and in fact, in his autopsy Mr. Birch had fentanyl within his system. All this being said, I only need one of their chemists, and it doesn't matter which, to testify that in general that they are often able to find fentanyl during one of their tests.

Sincerely,

Cory Goldensoph

CG/jt
Enclosures

MICHAEL STEVENSON
REG. NO. 17706-029
FCI OXFORD
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
OXFORD, WI 53952

RECEIVED DEC 0 1 2021

November, 24, 2021

Mr. Robert Phelps
Clerk of Court
U.S. District Court
Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, IA 52401-2101

     Re:   *Stevenson v. United States*
           Civil No. 2:21-cv-_____
           Crim No. 2:18-cr-01023-CJW-MAR-1

Dear Mr. Wolpert:

    Enclosed please find and accept for timely filing Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support. Please submit these documents to the Court.

    Thank you for your assistance in this matter.

                          Sincerely,

                          *Michael Stevenson*
                          MICHAEL STEVENSON
                          Appearing *Pro Se*

*Encl. as noted*



Michael Stevenson, 17706-029
Fci oxford
Federal Correctional Institution
P.O. Box 1000
Oxford, WI, 53952

**CERTIFIED MAIL**

7020 1810 0001 8171 5310

11-24
02

1006

US POSTAGE PAID
OXFORD WI
$24.21
AMOUNT
$0.00
R2305K140803-05

**XRAYED US MARSHALS SERVICE**

⇔17706-029⇔
Us Dcourt Nor Dist Ia
Box12
111 7TH AVE SE
Cedar Rapids, IA 52401
United States

**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
For Domestic and International Use
TRACKED & INSURED
Label 107, May 2014

Date_____11-24-21_____
The enclosed letter was processed through
special mailing procedures for forwarding to you. The
letter has neither been opened nor inspected. If the
writer raises a question or problem over which this
facility has justification, you may wish to return the
material for further information or clarification. If the
writer encloses correspondence for forwarding to
another addressee, please return the enclosed to:
FEDERAL CORRECTIONAL INSTITUTION
OXFORD, WISCONSIN 53952

— legal Mail —



**UNITED STATES POSTAL SERVICE** ™

# WE CARE

**Dear Postal Customer:**

We sincerely regret the damage to your mail during handling by the Postal Service. We hope this incident did not inconvenience you. We realize that your mail is important to you and that you have every right to expect it to be delivered in good condition.

Although every effort is made to prevent damage to the mail, occasionally this will occur because of the great volume handled and the rapid processing methods which must be employed to assure the most expeditious distribution possible.

We hope you understand. We assure you that we are constantly striving to improve our processing methods in order that even a rare occurrence may be eliminated.

Please accept our apologies.

Sincerely,

Your Postmaster